IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| A.C. ROBINSON, | | |
| Plaintiff, | No. CIV S-05-0342 JAM DAD P | |
| vs. | | |
| D.L. RUNNELS, | | |
| Defendant. | FINDINGS AND RECOMMENDATIONS | |
| _____/ | | |

    Plaintiff is a state prisoner proceeding pro se and in forma pauperis with an action filed pursuant to 42 U.S.C. § 1983. Before the court is defendant's January 11, 2008 motion to dismiss the case on the ground that plaintiff failed to exhaust his administrative remedies prior to bringing this action. Plaintiff has filed a timely opposition. Defendant has filed a reply.

**BACKGROUND**

    In his amended complaint filed November 14, 2005, plaintiff alleges that, on June 17, 2003, a riot took place at High Desert State Prison (HDSP) between black and white inmates. (Am. Compl. at 5-6.)[1] Plaintiff further alleges that since this riot, he has been confined in his cell for twenty-four hours a day except for shower time three days each week. (Id.) Plaintiff

---

[1] The court has done its best to decipher the allegations of plaintiff's handwritten amended complaint which is very difficult to read.

contends that the named defendant, the warden at HDSP, has denied plaintiff outdoor recreation and exercise in violation of the Eighth Amendment. (Id.)[2]

## DEFENDANT'S MOTION TO DISMISS

I. Defendant's Motion

      Defendant argues that plaintiff failed to exhaust his administrative remedies prior to bringing this suit. (Def.'s Mot. to Dismiss at 5; Dangler Decl. at 2.) Specifically, defendant argues that the appeals coordinator at HDSP rejected plaintiff's administrative appeal as untimely. (Def.'s Mot. to Dismiss at 5; Dangler Decl. at 2.) In this regard, defendant contends that prison officials imposed the challenged lockdown on June 17, 2003 and that plaintiff submitted his appeal almost a year later on May 9, 2004. (Id.) Defendant contends that "proper exhaustion" requires compliance with established prison appeal procedures. (Id. at 6.) Defendant concludes that, because plaintiff failed to properly complete the appeals process, this action should be dismissed. (Id. at 6.)

II. Plaintiff's Opposition

      In opposition, plaintiff argues that the appeals coordinator erroneously refused to process his administrative appeal. (Pl.'s Opp'n to Def.'s Mot. to Dismiss at 2.) Specifically, plaintiff explains that the appeals coordinator mistakenly believed his inmate appeal was challenging the initial lockdown when in fact the administrative appeal was directed at the ongoing, year-long deprivation of plaintiff's right to outdoor exercise. (Id.) Plaintiff concludes that by filing the inmate appeal on May 9, 2004, he met the legal requirements of exhaustion and requests that the court strike defendant's motion. (Id.)

---

[2] According to defendant's counsel, the inmate riot in question occurred at HDSP on June 17, 2003 and resulted in C-Facility being placed in lockdown status until September 3, 2003. (Def.'s Status Report filed Oct. 12, 2006, at 2.) Shortly after that lockdown was lifted a second riot involving 46 black inmates and 20 white inmates broke out in C-Facility on September 6, 2003, requiring C-Facility to be placed back on lockdown status. (Id.) That lockdown status was continued due to receipt of information by prison officials that new assaults, including assaults on staff, would occur if the lockdown was lifted. (Id.) An unlock plan was finally adopted in June of 2005 and implemented in July of that year. (Id.)

III.  Defendant's Reply

In reply, defendant reiterates that plaintiff cannot claim exhaustion of his administrative remedies when the appeals coordinator "screened out" his appeal for failure to comply with the deadlines and procedures applicable to inmate grievance appeals.  (Def.'s Reply at 2.)  Defendant contends that in fact the appeals coordinator properly rejected plaintiff's administrative appeal because plaintiff complained in an untimely fashion about actions taken by prison officials a year before he filed the appeal.  (Id.)  Defendant notes that even if the appeals coordinator had "screened out" plaintiff's appeal in error, plaintiff failed to object to the rejection of his first and only inmate appeal.  (Id. at 3.)  Finally, defendant argues that plaintiff did not give prison officials an opportunity to address his issue by either renewing an appeal explaining that he was challenging the denial of outdoor exercise as opposed to the lockdown or by appealing the rejection of his appeal through to the director's level of review as he was required to do.  (Id.)

IV.  Legal Standards Applicable to a Motion to Dismiss Pursuant to Non-Enumerated Rule 12(b)

By the Prison Litigation Reform Act of 1995 (PLRA), Congress amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  The exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  Porter v. Nussle, 534 U.S. 516, 532 (2002).

The Supreme Court has ruled that exhaustion of prison administrative procedures is mandated regardless of the relief offered through such procedures.  Booth v. Churner, 532 U.S. 731, 741 (2001).  The Court has also cautioned against reading futility or other exceptions into the statutory exhaustion requirement.  Id. at 741 n.6.  Because proper exhaustion is necessary, a prisoner cannot satisfy the PLRA exhaustion requirement by filing an untimely or otherwise

/////

procedurally defective administrative grievance or appeal. Woodford v. Ngo, 548 U.S. 81, 92-93 (2006).

In California, prisoners may appeal "any departmental decision, action, condition, or policy which they can demonstrate as having an adverse effect upon their welfare." Cal. Code Regs. tit. 15, § 3084.1(a). Most appeals progress from an informal review through three formal levels of review. See Cal. Code Regs. tit. 15, § 3084.5. A decision at the third formal level, also referred to as the director's level, is not appealable and will conclude a prisoner's administrative remedy. Cal. Code Regs. tit. 15, §§ 3084.1(a) and 3084.5(e)(2). A California prisoner is required to submit an inmate appeal at the appropriate level and proceed to the highest level of review available before filing suit. Butler v. Adams, 397 F.3d 1181, 1183 (9th Cir. 2005); Bennett v. King, 293 F.3d 1096, 1098 (9th Cir. 2002).

The PLRA exhaustion requirement is not jurisdictional but rather creates an affirmative defense that a defendant may raise in a non-enumerated Rule 12(b) motion. Jones v. Bock, 549 U.S.199, __, 127 S. Ct. 910, 921 (2007) ("[I]nmates are not required to specially plead or demonstrate exhaustion in their complaints."); Wyatt v. Terhune, 315 F.3d 1108, 1117-19 (9th Cir.), cert. denied sub nom. Alameida v. Wyatt, 540 U.S. 810 (2003). The defendant bears the burden of raising and proving the absence of exhaustion. Wyatt , 315 F.3d at 1119. "In deciding a motion to dismiss for a failure to exhaust nonjudicial remedies, the court may look beyond the pleadings and decide disputed issues of fact." Id. "I[f] the district court looks beyond the pleadings to a factual record in deciding the motion to dismiss for failure to exhaust–a procedure closely analogous to summary judgment–then the court must assure that [the prisoner] has fair notice of his opportunity to develop a record."[3] Id. at 1120 n.14. When the district court concludes that the prisoner has not exhausted administrative remedies on a claim, "the proper remedy is dismissal of the claim without prejudice." Id. at 1120. See also Lira v. Herrera, 427

---

[3] Plaintiff was notified of the requirements for opposing a motion to dismiss brought pursuant to non-enumerated Rule 12(b) on November 5, 2007. (Order filed Nov. 5, 2007 at 3-4).

1  F.3d 1164, 1170 (9th Cir. 2005), cert. denied __ U.S. __, 127 S. Ct. 1212 (2007).  On the other
2  hand, "if a complaint contains both good and bad claims, the court proceeds with the good and
3  leaves the bad."  Jones, 127 S. Ct. at 924.

V. Discussion

The Prison Litigation Reform Act requires a prisoner to properly exhaust his administrative remedies as long as the administrative authorities can take some action in response to the complaint.  See Woodford, 548 U.S. 84-85; Booth, 532 U.S. at 733-34; see also Brown v. Valoff, 422 F.3d 926, 935 (9th Cir. 2005) ("The obligation to exhaust 'available' remedies persists as long as some remedy remains 'available.").

In Woodford, California prison officials had placed a state prisoner in administrative segregation for allegedly engaging in "inappropriate activity" in the prison chapel. Woodford, 548 U.S. 86.  The prisoner filed a grievance, but prison officials had rejected it as untimely because the prisoner failed to file it within fifteen working days of the action being challenged.  The prisoner appealed the decision internally without success and subsequently brought an action pursuant to 42 U.S.C. § 1983.  Id. at 86-87.  The Supreme Court held that the PLRA requires proper exhaustion and explained that a prisoner does not satisfy the exhaustion requirement by filing an untimely or otherwise procedurally defective appeal.  Id. at 83-84.  In this regard, the Supreme Court reasoned that administrative exhaustion serves two primary purposes.  Id. at 89.  First, exhaustion protects administrative agency authority by allowing an agency the opportunity to correct its own mistakes.  Id.  Second, exhaustion promotes efficiency and may produce a useful record for a subsequent court case.  Id.  The Court noted that requiring proper exhaustion "gives prisoners an effective incentive to make full use of the prison grievance process and accordingly provides prisons with a fair opportunity to correct their own errors." Id. at 90.  The Court concluded that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function

/////

effectively without imposing some orderly structure on the course of its proceedings." Id. at 90-91.

California regulations apparently require an inmate to appeal a decision made or action taken by prison authorities "within 15 working days of the event or decision being appealed." Cal. Code Regs. tit. 15, § 3084.6(c). The Ninth Circuit has recently addressed this requirement and its potential impact on the PLRA exhaustion requirement for California prisoners in considering the Woodford case on remand from the Supreme Court. See Ngo v. Woodford,___F.3d___, 2008 WL 3863859 (9th Cir. Aug. 21, 2008). In that case the prisoner plaintiff sought informal review from the warden of restrictions placed upon his ability to participate in programs by the prison classification committee as a result of his violation. Ngo v. Woodford, 2008 WL 3863859, *1-2. However, he sought that informal review three months after the restrictions were first imposed with the warden partially rescinding the restrictions. Id. Approximately three months later, and almost six months after the classification committee imposed the restrictions, the prisoner plaintiff submitted his first formal appeal challenging the restrictions to the prison's appeals coordinator. Id. That appeal as well as a subsequent appeal were rejected as untimely under Cal. Code Regs. tit. 15, § 3084.6(c). Id. Against this factual background the Ninth Circuit concluded that the prisoner plaintiff had failed to properly exhaust his administrative remedies as required because he "sat on" his grievance regarding the classification committee's action "for months." Id. at *2.[4] In addition, the court rejected the

---

[4] The Ninth Circuit found it unnecessary to address whether California's fifteen working day limitations period for prisoner's administrative appeals amounts to a meaningful opportunity to exhaust because Ngo had waited months after the fifteen working days elapsed before beginning to questions the restrictions imposed on him. Ngo v. Woodford,___F.3d___, 2008 WL 3863859, *2 (9th Cir. Aug. 21, 2008). In his concurring opinion Circuit Judge Pregerson agreed with this conclusion but noted his "serious concerns about the constitutionality of California's prisoner grievance process" due to both the extremely short limitations period for filing a grievance and the lack of clarity in the applicable regulations about how appeals should be filed. Id. at *3-4. In doing so, he noted that "[p]rison officials . . . have significant incentive to find that claims are procedurally barred, given the large number of prisoner grievances." Id. at *3.

prisoner's argument that the actions undertaken by prison officials resulted in a continuing denial of his constitutional rights, thus rendering his administrative grievance timely. Id. at *2. In this regard, the court noted that such a continuing violation theory had been rejected by the court in Knox v. Davis, 260 F.3d 1009, 1014 (9th Cir. 2001), where it was held that any continuing effects were merely delayed but inevitable consequences of the initial determination or action by prison officials. Id.

In the present case, the record establishes that plaintiff did not file his administrative grievance within working days after the lockdown was imposed on June 17, 2003, and did not pursue his grievance through the director's level of review. Rather, plaintiff submitted his only administrative grievance regarding lockdown conditions on May 9, 2004. (Am. Compl. Ex. A; Dangler Decl. at 2.) The appeals coordinator screened out plaintiff's appeal as untimely on May 11, 2004. (Am. Compl. Ex. A; Dangler Decl. at 2.) The undersigned does share the concerns expressed by Circuit Judge Pregerson in his concurring opinion in Ngo v. Woodford, 2008 WL 3863859 at *3-4. In particular, his observations regarding the significant incentive on the part of prison officials to find claims procedurally barred is born out by the undersigned's experience in considering an onslaught of motions to dismiss prisoner civil rights complaints for failure to exhaust administrative remedies. There would appear to be little doubt that appeals coordinators in California prisons of late are "screening out" prisoner grievances on procedural grounds in record number.

Because of the concerns noted above and in Circuit Judge Pregerson's concurring opinion in Ngo v. Woodford, 2008 WL 3863859 at *3-4, the undersigned will not rely on plaintiff's alleged failure to timely file his grievance. Rather, the court finds only that it is undisputed that plaintiff failed to pursue his grievance to the highest level of review available, the director's level, before filing suit. See Butler, 397 F.3d at 1183; Bennett, 293 F.3d at 1098. In this regard, plaintiff failed to offer the appeals coordinator any explanation or clarification regarding the timeliness and content of his appeal. Nor did plaintiff attempt to submit any

subsequent appeals at the informal level of review or first, second, or director's levels of review. (Dangler Decl. at 2.)  By filing a lawsuit without properly completing the administrative grievance process, plaintiff failed to exhaust his available administrative remedies, a prerequisite to filing this action.  Woodford, 548 U.S. at 90-91.  See also Wyatt, 315 F.3d at 1120 (a prisoner's concession to nonexhaustion is a valid ground for dismissal of an action).

As noted above, the defendant has the burden to raise and prove the affirmative defense of failure to exhaust administrative remedies.  See Jones, 127 S. Ct. at 921; Wyatt, 315 F.3d at 1119 & n.13.  Defendant Runnels has carried his burden in this regard.  Plaintiff has not responded by demonstrating that such administrative procedures were unavailable or that prison officials effectively obstructed his ability to pursue his grievance through the director's level of review.  See Ngo v. Woodford, 2008 WL 3863859 at *2.  Given these circumstances, the court concludes that plaintiff failed to properly exhaust his administrative remedies with respect to his claims and that defendant's motion to dismiss should therefore be granted.

**CONCLUSION**

IT IS HEREBY RECOMMENDED that:

1. Defendant's January 11, 2008 motion to dismiss (Doc. No. 45) be granted; and

2. This action be dismissed without prejudice for failure to exhaust administrative remedies.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fifteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised

/////

/////

1  that failure to file objections within the specified time may waive the right to appeal the District
2  Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).
3  DATED: August 27, 2008.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:9
robi0342.57